First case, Your Honor, under 2-13-1019, Black Valley Families Against Planned Parenthood, et al., against the Appalachians, v. Planned Parenthood of Illinois, et al., against the Appalachians. Arguing on behalf of the Appalachians, Mr. Peter Green. Arguing on behalf of the Appalachians, Mr. Christopher Wilson, Mr. Alan Wall, Mr. Peter Wilson, et al. Good morning to all, and Mr. Green, you may proceed. Thank you, Your Honor. Good morning, and may it please the Court. Your Honors, this is a case of fraud. It is a fraud that is remarkable in several respects. First off, in that it is flagrant. It involves not merely omissions, but actual affirmative misstatements. But we're dealing primarily with zoning law and issues relating to zoning ordinances and authority for those ordinances under the Municipal Code, correct? Well, and the zoning laws provide the context for this. The issues of the fraud, though, do go to the heart of the zoning process and to what occurred here and the errors that were committed. And so, as we come before the Court on behalf of the plaintiffs, our primary claim is a statutory claim. The private attorney general statute of the Municipal Code, where the plaintiffs are able to stand in the shoes of the municipality and to enforce the Aurora zoning ordinance as it was enacted by the duly elected city council of Aurora. Well, when your clients had an opportunity to present evidence at the hearing that was held in this matter, before the zoning or before the Aurora authorities, no evidence was presented by your clients of these issues you are now alleging. Well, and no, Your Honor, with respect, we were knocked out of the box on preliminary motions to dismiss. Now, on the building permit issue, there was a hearing. And no one presented testimony on behalf of your clients at that time. Well, and, Your Honor, if I may, I'll get into that very briefly then. We had filed an appeal on the basis of the zoning violations, for the most part, and the building code board said that they had no jurisdiction to hear our violations that we had alleged. They then stated there was a punch list of items that we had not challenged. We were not challenging the specifics of the lighting, you know, were there enough light fixtures or electrical outlets on the walls? And so they dismissed what we had challenged and then brought back this punch list. So at that point, we had no evidence to refute a punch list of items, certainly, because we hadn't challenged them in the first place. So to refer to that as somehow an ability to present evidence on matters that have been excluded and dismissed would be inaccurate, Your Honor, with respect. And what about the mayor taking time, significant time, according to this record, to investigate some of the issues that had been raised before there was even any opportunity for possible hearings? Well, and that has been characterized as a legislative act by some of the defendants. And we would respectfully contend that the city council was specifically excluded from that process. And we've cited the evidence in our briefs that the city council was briefed that they had no place in the administrative zoning process. In fact, it even went out in a newsletter to the residents of Aurora, a Q&A. There is no place for the city council in that objective administrative process. And so in terms of legislative deference here, that's inappropriate. So is it your contention that a trial court and this court should review the decisions independently? We believe that the issues are issues primarily of law, and so they should be subject to a de novo review by this court. As well, when you do look at the fraud, and I don't use that term lightly, but I can back it up, and we have backed it up in our briefs. It appears the officials of Aurora did oversee this, so the mayor and others were defrauded throughout the process and did not have the information that they needed, the truthful information that would have been needed to make the determination. Well, the mayor made a point of getting it. He got three opinions, did he not? Two from lawyers, one from the state's attorney of Kane County. Well, and the state's attorney clearly said there was no criminal activity. The first attorney, Mr. Martins, was cut short on his investigation because there was an allegation of a conflict, and so he wrapped up his report early and even did not get to the zoning issues that are really at bar. But Mr. Lukens, did he not? So there is one attorney, a private attorney, who is not the zoning official of Aurora. He is a private attorney and certainly a good one. I respect him personally. At the same time, that single attorney has no greater weight and his opinion should have no greater weight than any other attorney here in this jurisdiction. Did the Aurora City Code in any way provide for that procedure to be used? No. As far as I know, there is no provision in the Aurora Zoning Ordinance to, well, let me say this. It doesn't ban it, I'll say that. But we don't look at statutes necessarily. Whether they ban it, we look at whether they empower something to be done, right? The authority to do something. Well, in his defense, I will say the mayor is the chief executive officer of Aurora under their system of government, so he is the chief administrator, so he would have... But he's not a legislative official. Well, he is a legislative official insofar as he is a member of the 13 members of the city council. So he is one of 13, as I understand their system. Certainly, they have the alderman and plus the mayor. Now, there was a hearing that was held on November 16, 2006. And as I understand it, it was a hearing with three aldermen and the mayor, and there was a resolution that was passed after that hearing. Right. And, Justice, the mayor was not present. He is not a member of that committee. Now, what committee was that? So that was the Planning and Development Committee. Okay. And so that was the seminal hearing where the question was asked of the representatives of Gemini Office Development, do you have a tenant? And, of course, on their papers up to that point, they had taken a white envelope procedure, which is one that you come to the city and say we want to build a building and we'll find tenants later. They stated that they did not have a tenant. There were negotiations. Now we know now that was a lie. All right, but getting back to that November 16 hearing, does that qualify as legislative action? We would contend it does not. Let me ask you one further. I want you to explain that, but let me just ask you another question that goes along with that, and that is was that procedure provided for in the Aurora City Code at some point? That procedure is provided for. So there is a Planning and Development Committee of three members of the city council, but it is not the entire city council. As well, you can see from that procedure, in the filings that had been made by Planned Parenthood, well, now we know by Planned Parenthood at the time, Gemini, there was a statement that the property values of the surrounding landowners would increase. That was on their qualifying land use statement. So there would be minimal impact to the traffic in the area, that all zoning requirements were met. And you see as well in their forms, we had cited to the court there is a requirement that if one wants these modifications and exceptions to Aurora's zoning ordinance, that one has to designate them. There's a spot on a checklist and it says, please designate all of these. None were designated. Those are uncontested. These are uncontested facts. They go before that committee, give no indication of the actual true intended use of the property, no indication of the fact that they were looking at 30,000 visits, medical visits per year, which is about 100 a day on that property. Instead, I believe the use was based on representations. One of the commissioners on the committee characterized the use as, quote, quiet, as I recall. And so it was anything but. And so we look at that process. Any result coming from that process can't be, first off, should not be given any credence at all. Second, it certainly is not legislative because it is not the city council acting. And then third, we've also cited there is a provision under Aurora code that a decision of that body can be sent out to the city council as a recommendation. And there were city council members, one or more, who said, I would have appealed it had I known what was actually happening and the impact. That's not mandatory, though. That's permissive. That is a, well, if that city council member is deprived of his right, then certainly the right is there. No, but it's not something that has to be done. It doesn't have to be done. It has to be followed. That process does not have to be followed. So you're saying that the thing that indicates this was not or determines that this was not legislative action is the fact that it was misrepresented. Is that what you're saying? Other than that, would it have been legislative action? Well, in this particular case, it would not have been legislative action otherwise because it's not the city council acting and the incidents of legislative action were not present. So legislative action would be a special use permit where you've got notice and hearing to surrounding landowners. None of those incidents were present here. So even then, it couldn't have been legislative action for those grounds. Council, assuming for a minute that the city's decision was legislative in nature, turning for a minute to the issue of discovery, have you identified any information obtainable in discovery that would show that the decision made was arbitrary and capricious, which is the standard that needs to be used? Your Honor, the motion for judicial notice that was filed a few weeks ago based on the documents we just received are really an exhibit A of what would have come forward in discovery. Well, those documents all, without getting into the details of that motion, which we're going to take with the case as we've notified you, those documents were all generated at a later date, were they not? They were generated at a later date, certainly. Correct. Well, yes, Your Honor, but the documents also indicate, they indicate several things, one of which is every single Planned Parenthood facility of the nine states are all acting under tax exemption, and the representation to the lower court had been, we are operating, and I can read it to you, I can record it to you. Well, I don't think we've ruled on the motion yet, so I don't know. That's in the record, Your Honor. It's in the record. What was represented to our lower court was that they are paying taxes and that they are acting in a for-profit manner. And so that's very, very applicable to are they acting as a not-for-profit charitable organization, are they acting as a So that's what you would be looking for in, you would have been looking for in discovery. Well, Wasn't that part of the record, the records of those agencies, wouldn't that have been available to you without discovery? Well, and not all of them, Your Honor. I mean, we have pieced together what we can in this jigsaw without opportunity to really get a discovery. First off, I mean, it is a jigsaw puzzle, so trying to figure out what is not there is much more difficult if you don't have a discovery record. Next, we would like to go into the use. I mean, this is the primary issue before the court was what is this use. And we are piecing it together based on public documents and not actually asking the people that are using the property. And you're saying the 5,000-page record wasn't sufficient to do that? It certainly was. Well, Your Honor, we would do our best with it, but we certainly, we should be entitled as a general matter to be able to get the sworn statements of the Planned Parenthood individuals who are running the facility. I mean, we're trying to piece this together through FOIA requests, which is, that's not a discovery device. How did this meet the criteria? How does this show, how would this information have shown that the decision was arbitrary and capricious? Well, and Your Honor, when you look at the two zoning categories, the one that is being claimed by the defendants and the other that is being claimed by the plaintiffs, it would be a matter of if the lower court made a misreading of the law, so did not construe the terms of each zoning category appropriately, so made a misreading of the law, then certainly the facts could not have been applied correctly. And if the city of Aurora made a misreading of its law, and we would respectfully contend that it did, and a clear one, then that would be arbitrary and capricious to apply the law incorrectly, to apply a wrongheaded interpretation of the law to the set of facts. Well, it might be incorrect, but that is, it might have been a mistake, but that is not arbitrary and capricious. That is a much more significant standard, I believe. So a mistake is a mistake. Arbitrary and capricious means that they acted without doing any research, without doing any, without having any knowledge, and without caring about any of the above, and that certainly does not appear to be the case from this record. And, Your Honor, I might make the distinction between a legal, the legal interpretation of the statute or this ordinance versus making an application of the facts to the law as understood. The use category states, you know, the terms charitable organization appears in the use category. The term health-related facility, and then carried on, when not operated for pecuniary profit, appears in the special, this nonprofit use category. So to look at those terms and somehow say that an organization that has admitted it is a charitable organization, that it is operated exclusively for charitable purposes, doesn't fall in that category, would be, it literally goes against the terms of the ordinance itself. And there's been a claim that that's vague, somehow vague, but the term was not vague when it was being put in an affidavit to the Board of Review and to the Illinois Department of Revenue. And really, when it was being put to bond buyers, when they were looking for the $8 million, the Illinois Finance Authority. Now, Fox Valley, let me just ask this question. There was an ordinance that modified the Fox Valley Plan Development District on December 7th, 93, right? Yes, Your Honor. And said that zoning BB applies to all business areas, and that only uses that are permitted uses on December 7th, that date, shall be permitted uses. Do we know, does the record show what the permitted uses were on that very date? And, Your Honor, it is my understanding that those uses, I mean, the records that we've got of the zoning ordinances are undisputed, that that special use category had been a special use category at that time and going back. It was changed as I, well, first off, Your Honor, I would say that the permitted uses carried forward. And actually, I don't have the ordinance in front of me, but I had understood. Well, it says only uses that are permitted uses on December 7th, 93, shall be permitted uses. But do we know what they were? Well, and, Your Honor, I would say that this use was not permitted at that time, nor was it permitted at the time of the application or the time of the issuance of building permits. And the record reflects that. I, well, it certainly, we have two separate full versions of the Aurora Zoning Ordinance, as it was, as it sat at the time of application, and as it sat at the time of building permit issuance. Because that was the action of the city council in this case. The one action was changing it from a special use to a prohibited use. But those are the two zoning ordinances that are in the record, Your Honor. Okay. Mr. Bergen, I'm going to let you finish up your question. No, I did. I have a question. Who, as a matter of law, who is the titled owner of this building? It is my understanding that Gemini Office Development still owns the facility, although, I mean, I don't know if the ownership has changed over to Planned Parenthood at this time. And who, or who does the ordinance apply to? The titled owner or parties who rent from the titled owner? Well, the ordinance will apply to the use. So that would be the occupant of the facility. And this was that white envelope in that the later occupants, distributive occupancy deals with the tenant of the facility. And we respect the intent, too. These are disregarded entities. They're dummy companies that were set up. They're fully controlled. They're single-member companies that are fully controlled by Planned Parenthood. Excuse me. And you're saying you had absolutely no knowledge, even though your clients have been involved in this area for some time, that Gemini and 21st Century had anything to do with Planned Parenthood? We certainly didn't until it was made public that the facility was going to be a large Planned Parenthood. At that point, then, FOIA requests would have begun. And eventually, then, the city of Aurora also reviewed its own process, which is shown in the e-mails in the record. So certainly my clients had no knowledge that this was going to be a large abortion clinic. And at the time, it was the largest in the country. So certainly they would have done something, at least the clients that were very much involved in this would have done something. Are Gemini and 21st Century LLCs in the state of Illinois, or do they emanate from somewhere else? They are Illinois LLCs. Okay. And just so I understand, I believe some of your clients are neighbors of, they live in the neighborhood, right? And I would, and I should have made it more clear, Fox Valley Families Against Planned Parenthood is before the court on behalf of its members who live within 1,200 feet, and we have some individual neighbors who are also individual plaintiffs here, but they are neighbors. That is the cause of action here, is folks living within 1,200 feet on a private attorney general statute. And are they living or are they working within that 1,200 feet? Well, they were, some of the members have moved away, but the ones that are remaining are living there right now. Despite the fact that it's zoned as a business district? Well, the Planned Parenthood is zoned as a business, you know, a profit-making business area. Immediately next to it are these folks' homes. It's immediately next to residential. So some of these folks' homes. Within 1,200 feet, you're saying? Right, well, and zero feet measuring property line to property line. Yeah. All right, you'll have an opportunity for response. Thank you. Thank you, Your Honors. All right, Mr. Christopher Wilson. Good morning. Excuse me. Good morning, Your Honors, and may it please the Court. My name is Chris Wilson. I represent Planned Parenthood of Illinois, Gemini Office Development and 21st Century Office Development. To respond immediately to your question, Your Honor, which was what was the permitted use in 93 under the then-existing ordinance, and medical clinics were a permitted use, medical office buildings were permitted use, and that is the use that was submitted and approved by the city of Aurora. So it was a medical clinic, and it was approved as a medical clinic in 2006 and 2007. Is the definition of a medical clinic the same as a health facility operated by a not-for-profit? That provision, which has been cited by the plaintiffs, has never been applied. It's a single line in a table. Medical clinics, though, have been approved, whether they're not-for-profit or for-profit, repeatedly and, as you would expect, throughout the city of Aurora where they're permitted in a business district. There's nothing about the size of a medical clinic, the number of visits of a medical clinic. It's not defined beyond that. It's just medical office buildings, medical clinics are permitted uses in business districts, and they're permitted here. What is the significance of the fact that this particular area is in an area considered a planned or would be a planned development? I can't remember the last name of the- It's a planned development district. Thank you, district. What's that significance with reference to this case and this owner? It is of overwhelming significance, and it's the question that gets to the heart of this matter, which is this is part of a planned development district. That's Section 10.7 of the Aurora Zoning Ordinance. And 10.7 provides expansive rules and regulations on how planned development districts and additions to planned development districts should be handled. Every one of those criteria was met throughout this process, beginning with a submission of a plan and a meeting with the City of Aurora staff, approval by the staff in a staff report, approval by the Planning Commission, approval by the Planning and Development Committee of the City of Aurora City Council, and then finally an ordinance adopted by the City Council, signed by the mayor, signed by the city clerk, and signed by each of the three members of the Planning and Development Committee of the City Council. And that, we submit, is exactly the type of legislative decision that is discussed in the Dunlap case and that is reviewed under an arbitrary and capricious standard. Was that an ordinance or a resolution, or are those two different issues, but there's really no significant difference between them? I don't know. I know that it was submitted as a resolution and it's titled an ordinance, so I don't know what the significance is for the City of Aurora, but we argued before Judge Fullerton and he agreed that that was legislative action taken by the City of Aurora. And the other significance of the planned development district is that the entire middle section of the plaintiff's argument, which Mr. Breed didn't get to, is an attack on landscaping and parking and setback. All of that is permitted in a planned development district, all of those that you're entitled to depart from those under 10.7 slash 13.5, provided you make the staff aware of that, submit it as part of your plans, and then it's approved as part of your plans. Approved by who? Ultimately it needs to be approved by the City Council. It can be delegated to the Planning and Development Commission. And if they approve it, then it's approved unless it's objected to within six days. So you didn't get a special exception or didn't apply for a special exception. It was approved as part of the Fox Valley Development Plan. Well, it's an interesting distinction. The question is we did get relief from what ordinarily would be permitted in a business district, but that's provided to any planned development district, and all of our materials were submitted as a PDD, and it was recognized in that way by the staff. And so the parking requirements, for example, and the dimensions there, in a BB district, yes, that might have been an issue that would have needed a variance, but if you submit it as a planned development district, it's permitted, it's reviewed, and approved. So it was technically approved. The departure was under 10.7, 13.5. And that was contained within the initial filing, you're saying? It was, Your Honor. And to that point, if there's concern, well, if we'd known it was planned parenthood instead of just doctors that we liked, we would have treated this differently or someone would have objected. All of that landscaping was disclosed. Landscaping, parking, setback. It was disclosed that if the people in the community had a concern about, well, that's too many parking places, that was there for them to object to. What they're saying is, well, we object to the tenant, but that doesn't give you grounds to ignore parking setback and other physical limitations on the property that have been submitted. Well, isn't it a legitimate concern, the number of visits there per day, the number of cars in the neighborhood, the number of pedestrians in the neighborhood, the fact that this particular business will attract, in a sense, I'm going to refer to it as a nuisance, in a sense, because it attracts so many people that otherwise would not be in this nice little neighborhood. And it's hard to even make a comparison with some other type of business that would do that. I've been trying to think about that. Is there any other type of business you could compare it to? There really isn't. First of all, just to step back from your question for a second, Your Honor, it's an important one. I want to answer it fully. The neighborhood is well behind. It's beyond a berm. The only reason they qualify is because it's 1,200 feet as the crow flies. This is in an area with now a stakeway, formerly a Dominick's. A lot of business is running along New York Avenue and Oakhurst in Aurora. It's part of a busy street. The neighborhood is beyond it and behind. To the south. I might have my directions wrong. I think it's to the north, but I'm not sure. North would be across what's the major thoroughfare, Galena? To the south and to the east. Thank you. But, Your Honor, all of that, first of all, there is no provision about how many visits do you expect a day in a medical clinic. That would be carving out a new ground. But as to, well, we have this many parking spaces, that was disclosed. That was something that anyone who reviewed these plans could have found out and could have seen. And if I could, the policy that is being urged upon this Court is a dangerous one. Taking this out of the context, anyone can have a dispute with anyone at any time and say, I don't care about the City of Aurora. I'm going to fight with this restaurant. And I didn't know it was going to be this guy owning it. And now I get to open up the entire zoning process. That would be a real can of worms for the City of Aurora. And that's why, as you noted, the City of Aurora started an unprecedented review of this process to make sure that they hadn't done something wrong, that there hadn't been some disclosure. Because this isn't a fraud case. This is a zoning case. And they reviewed all of the zoning in October of 2007, had three attorneys review it, and determined, no, there is no reason to revisit all of this. We've made the appropriate determination under our zoning code, and we're going to go forward. Did the mayor make that executive decision after those reports? The City of Aurora made that decision, and it was not revisited by action by the City Council. When you say the City of Aurora, who in the City of Aurora made that decision? I don't know, Your Honor. But the mayor announced that. I do know that the mayor made the announcement and that it went out as a publication of the City of Aurora. I don't know who within Aurora, who all was involved in issuing that report. Mr. Wilson, I'm going to ask you to stop just a moment and catch your breath. Ladies and gentlemen, we're very happy that you're all here this morning and interested in this case. But we have four very competent attorneys who will argue this case. And if there are details that need to be filled in, we will ask them to do so. So please just listen and do not participate. Thank you very much. If I could go back to the legislative decision, I think there was some question of whether or not the city council needed to act for this to be a legislative action. But that is not how the courts have interpreted the phrase legislative action. Legislative action is that which involves official decision-making, decision-making authority, discretionary authority. And that's why even a special use permit in the Village of Schaumburg case in Dunlap was considered legislative action. And, in fact, here we would submit we met the requisite for a legislative action even under the narrow definition of only the city council. But really all of this action, and Judge Fullerton found this, and I think found it so correctly, that when you're looking at a decision by a subcommittee of the city council, and then an ordinance adopted by the city council, and then an unprecedented review of that by the entire city, and then an approval of that decision, these were all legislative decisions. And those are subject to an arbitrary and capricious standard. And the plaintiffs didn't come close to meeting that standard. And, in fact, this court had a fair amount to do with this change from executive or administrative to legislative when it decided Clarence and then the Supreme Court accepted our analysis. And then the legislature quickly changed it and included many things, well, actually all actions, apparently, as legislative because they did not like the spin or the situation that this court and the Supreme Court had created, correct? Exactly, Your Honor. It was the Clarence decision that was then affirmed by the Supreme Court, which then was amended by the state legislature to ensure that legislative actions are broadly interpreted and that city, that whole municipalities, particularly cities like the city of Aurora, have the broad authority they need to operate their zoning code. And the important consideration here is all of the complaints that the plaintiffs have raised were made well known to the city of Aurora, and they determined they were not going to change course. So this wasn't a case being argued to that there's some fraud and that nothing could be done. The city of Aurora reviewed all of this and determined that they were not going to alter their course. And once it became aware of it... At what point in the process are you speaking of? You said that the city reviewed this. Are you speaking of the review by the attorneys that they hired to review it? I guess I should be referring to both. First of all, the entire plan was reviewed by the city and approved in the ordinary course. It's true that in July of 2007, it became known that the tenant was going to be Planned Parenthood, and there was a considerable public response. At that point, attorneys were hired, the city reviewed the entire process and determined that they had no objection to the process and that they did not believe that the fact that Planned Parenthood had not been fully disclosed was sufficient to undo the zoning decisions that had been made. So the city's review of this with full knowledge came in the form of those attorneys reviewing it, correct? Well, the attorneys were making recommendations to the city. There's no argument, nor can there be any, that the attorneys had the authority to act. The attorneys were doing what attorneys do. They were providing advice. If I could, the last objection that the plaintiffs raised is the discovery, and whether or not they, because this was an administrative review matter, Judge Fullerton limited discovery to the extensive public record. There's been no offer of proof that this somehow limited the plaintiffs in any way from presenting a full and robust case to the court and from making all the points they needed to. They simply have not met their burden. Well, on administrative review, essentially the court reviews a record and then counsel is offered or invited to argue that particular evidence, correct? Correct. And what evidence was there to argue by Mr. Breen's client that they have not been able to do so, in your opinion, at this time? I don't think they were limited in any way. They had a full opportunity for a hearing in front of Judge Fullerton and presented a very powerfully backed case, and Judge Fullerton disagreed. So I don't think they were limited. And they certainly didn't say, if we had additional discovery, here's what we would have been able to present. All of that was developed. There were extensive Freedom of Information Act requests, and the record was fully developed. All right. Thank you very much, sir. Mr. Wall. Good morning, Your Honors. Good morning. And may it please the Court, my name is Alan Wall, and I represent the City of Aurora. The individual Aurora officials who were named as defendants in this matter, Thomas Weissner, Ed Sieben, and Herman Banneke, and also the Planning Commission of the City of Aurora, along with the Planning and Development Committee of the City of Aurora. During my remarks, I'll refer to these defendants collectively as the city defendants. Let me ask a question. Is there currently anything within the Aurora Zoning Ordinance that requires notice of who the tenants will be or the specific use that the building will be put to when a building permit, just the building permit is applied for? Not that I'm aware of, Your Honor. Does that ever come up? Your Honor, not to my recollection. And I think that this really goes to the heart of the due process claim, which is one of the reasons that I'm here is, Your Honors may recall, we filed a motion to dismiss a due process claim that was granted by trial court. And I think it's important in that regard. For a due process claim, there's got to be state action. And if you look at the appellant's arguments, their claim is that they were denied timely notice regarding the variety of decisions to which they object. Well, if there's a due process violation, that has to have arisen as a result of action that the city of Aurora took to deny timely notice. But everything that we hear from the appellants is that both the appellants and the city of Aurora, in effect, were duped. There is a long recitation in the appellant's briefs to this court outlining the numerous occasions of misrepresentations, misstatements, and Mr. Breen began his remarks today saying this is a case of fraud. If that's the case, and the city of Aurora, by the appellant's very arguments, was, in effect, a victim of misrepresentation and fraud, how could the city of Aurora had provided the notice that would have been necessary or the notice that the appellants claimed they did not get if the city of Aurora itself didn't know who was, in fact, behind all this? And I think the fact that the appellant's focus on this so-called fraud element really cuts against their claim to any kind of state action that would be necessary to support their due process argument. And this is why I do believe that the trial court's decision in granting the City Defendant's 2615 motion to dismiss should be sustained. Now, we know from this record that there was one occasion, and that's the November 16, 2006 meeting, where one of the three members of the Planning and Development Committee said, I'd be interested in knowing who your tenant is when you can release that. Is there anything else in this record that indicates that prior to the re-review? When the three attorneys were brought in. Correct. Prior to that. Is there anything that required this Gemini LLC to identify tenant? Well, Your Honor, it's my sense that to the degree that documents that they submitted were documents that presumably were intended to elicit straightforward information about the nature of the tenants and the use, to that degree certainly the Aurora records ask for that. Prior to November 16, I am not aware of any occasions where you actually had a question put to Gemini directly in a public forum. Who are your tenants and what is your use? Is a building permit, does it depend upon who the tenant is going to be other than the general use, which was here medical office? I think that the granting of a permit is based on the meeting of a number of requirements that are often highly technical requirements that line up with certain provisions in, let's say, the part of the Aurora Code that concerns granting a building permit or the part of the code that would indicate granting the variety of different types of permits that go into a large-scale development. Would you agree that one consideration for a due process claim would be whether or not the city followed its own ordinances and procedures? Would you agree with that? I would agree with that to the degree that the city had the information that would be necessary to allow it to act on the procedures and processes that are part of the city code. But, Your Honor, I think it's significant that the city would need the information that would inform it of the necessity to take, in this case, action that would grant notice in a timely manner. And the city's argument is since it didn't, and by, again, the appellant's own briefs, it didn't have that notice, there wasn't, if you will, a kind of trigger. Did the city follow its own ordinances and procedures? I think it did, Your Honor. Okay. One other question. It is difficult to come up with other comparisons and so forth. However, there is a low-income medical clinic that is downtown Aurora. Yes, there is. Right? I don't recall the name of it, but it provides medical services to poor people. It's a methadone. Among other things, it may be a methadone clinic. Well, the one I'm thinking of is a faith-based, low-income medical clinic. I don't know that its doors are open every day, but its doors are open a lot of days, and they serve poor people in the community. Right? Is that zoned BB or is it zoned by some special use? Your Honor, I actually don't know the answer to that question. If I were to speculate, that's all I would be doing. And I don't recall whether it is considered a not-for-profit that falls, I think, under the B&B business district. I don't know if it's in that district or not. Okay. All right. Would that information be in the record? I believe it would depend, Your Honor, on whether the particular clinic that Justice Spence is referring to appears at some point in the record. Thank you. Thank you. All right. Mr. Peter Wilson. Good morning, and thank you. My name is Peter Wilson, representing the Aurora Zoning Board of Appeals and the Aurora Building Code Board of Appeals. May it please the Court. Actually, these two named defendants in this matter are uniquely different from the other defendants in this case. They are an internal administrative body of the city, structured by ordinance of the city and with very limited jurisdiction. The main concern we have here is that when the plaintiffs filed their second amended complaint, they filed a five-count complaint, 64 pages in length, with eight attachments, with over 100 numbered paragraphs of allegations that involve all of the other matters that have been before you today, but have no relationship to either the Zoning Board of Appeals or the Building Code Board of Appeals, but are incorporated by reference into the counts involving us, the two counts involving us. And, in fact, the Zoning Board of Appeals and the Building Board of Appeals, as I say, are subject only to an administrative review. In this case, they had very limited jurisdiction to hear an appeal from a decision of the zoning administrator or the building code official, both of which occurred more than a year before any matter was filed before these two bodies. Based on the motions to dismiss, those appeals were dismissed. But I would also like to state that in nothing that has been filed here, aside from that jurisdictional matter that should have been based on the record only in the circuit court and also in this court, at no time have the plaintiffs ever indicated that any of those decisions were incorrect. They merely have included us with broad general allegations that either the ZBA or the BCBA should revoke the zoning, has no authority to do that. The ordinance is very clear that we have no authority to do that. We also don't know if the allegations that the plaintiffs make here are true or not. The zoning administrator, for example, could only act on the application that's presented to him back in October of 2006. But the plaintiffs back at that time didn't have all the material facts, did they? Wouldn't make any difference. Why not? Well, because, again, the zoning administrator can only act on what he receives. And in this case, he reviewed it as a, I believe it was a medical office building. That's what was presented. That's what then went by his recommendation to both the plan commission and to the city planning committee. Beyond that, we can't second guess. Essentially what they've said, and I put the example in my brief, they come to the zoning administrator and say, well, we want to run a donut shop. And that's approved, and the building's built, and everything is there, and it's occupied. And then suddenly you find out that there's an auto repair business there. You can't go back to the zoning board of appeals and say you should have reversed the decision of the zoning administrator because had you known something later on, that's what you would have done. And the same thing with the building code. You can't file a complaint saying you shouldn't have granted the certificate of occupancy or issued the building permit based on the information presented after the building's built. So is that an issue of timeliness? Pardon? Is that an issue of timeliness or some other issue? For the jurisdiction of the ZBA and the BCBA, yes. They would have had to appeal the decision of the zoning administrator at the time. But even if they had, you can't say that his decision was wrong based on what was presented to him. You just can't second guess a year or two years later, especially for two bodies with such limited jurisdiction. Is there anything in the, I keep wanting to call it the Arizona, but I realize it's Aurora, that requires the person applying for the building permit to identify anything other than the purpose of the building, which would be in this point it was called a medical office building. Is there anything else required? Correct, and I believe the building permit application also requires the building plans so that when the final inspection and certificate of occupancy is issued, it's determined to be safe for occupancy. The electrical is in the right places, the right electrical outlets, the right water for fire protection, those kinds of things. That's the inspection on the building. Does a list of tenants ever have to be provided? I don't speak for the city of Aurora, but I don't believe so. Certainly that would never be involved with respect to the Zoning Board of Appeals or the Building Code Board of Appeals. And why not? Because that's not what their purpose is. We don't deal with the tenant. The zoning administrator merely reviews the initial submission to see if what the applicant wants to propose for that area is consistent with the zoning, and in this case, when they said we want a medical facility, that was determined to be consistent with the zoning. With respect to the building code, that has nothing to do with zoning at all, and the issuance of the temporary certificate of occupancy only is a certification that the building is constructed in accordance with the approved plans and specifications and is safe. Is there anything, what if, well, in fact, what if the owner is, in fact, the tenant in some fashion? Does that change the analysis or the review of either of the bodies you're representing? It does not. Any questions? No. Thank you, Mr. Wilson. Mr. Breeden. A little bit of ground to cover, Your Honors. Just to start with the issue of the review by the City of Aurora, there has been a lot talked about there. It needs to be made clear that, first off, the City of Aurora is acting on the assumption this tenant is paying taxes. There's no reason to think that there was any different representation of them than was made to the trial court in this. As well, you'll look in the report of the attorney, Mr. Lutkehans, on that. He did not even identify the correct zoning district. And the reason is because the actual ordinance that governs the property, 093-124, that we referred to earlier, that was not known to the city. It was never once referenced in that report. Mr. Lutkehans called this a B1 or B2, B3, or O, I believe was what his representation was, not a BB. So this issue of somehow that this was a careful review that was accurate is absolutely false. Why is there any deference given to the review of an outside attorney that the city hires and says, give us some legal advice? If it's not provided for in any kind of ordinance or any kind of code, what difference does it make? That would be a pure issue of law. It's a pure legal opinion. It's got the same weight as what I would have or what Mr. Wilson would bring forward. You are the court. You're the ones that would have to then determine, hey, who's right and who's wrong? And I did want to also just get to that, the issue of the building permit and the permits. Exhibit 3 to our complaint has the actual building permit applications which were filed with the land use application. Every one of them requires the tenant. And, in fact, there's a flowchart there that talks about the permit application process, that it's different if it's a white envelope because it makes sense. You build a ten-unit building and then unit one, a tenant comes in and wants a certificate of occupancy, they have to file a different sort of permit application, and you evaluate that use in zoning and et cetera. Again, it was the proverbial donut shop versus the auto shop. If you built a donut shop and all of a sudden someone wants to run in and in unit one, hey, we've got a nice-sized garage, we want to run an auto shop here, you're going to evaluate that separately. That has to be done. And it's provided as Exhibit 3 to our complaint. We've got the flowcharts in there and all the rest. And, in fact, the exhibits- The flowcharts are your analysis of that issue, or they belong to the city documents? They are- They're documents provided by the city. Your Honor, yes, they are documents provided by the city. We did not, in fact, as I understand it, it's on the backside of the permit application, a multi-page, it would be on there and attached. And you can see on the building permit itself, it says very clearly, envelope permit. It was clear from the beginning that this was intended to be a for-profit medical building. Again, you've got for-profit companies sitting in front of the city of Aurora paying taxes. So it was, I mean, that was the representation of the city from minute one. Well, is Gemini a for-profit company? Gemini is an LLC. It's for-profit. 21st Century, above it, there's two layers of dummy companies here. 21st Century, above it, is a for-profit. 21st Century is the sole member of Gemini. Planned Parenthood is the sole member of 21st Century. So who's paying the taxes on this building? Well, those two entities, if Gemini, which, I don't know, I guess that would be something to scurry with. Well, we haven't looked for an exemption at this time. They have applied for a 2013 exemption. They got that. They then turned around and got a refund of 2010 through 2012 taxes. But they paid 06, 07, 08, and 09. And actually, I will say this. I was doing final preparations last night. I checked the State Charitable Trust Act, which governs directors of non-profit corporations. It specifically says in there the directors of non-profit corporations are bound, they're duty-bound, to avoid unnecessary taxes. So this charade of paying taxes to make it look like it was a charitable use was, I mean, it was extreme. I mean, they were willing to go to great lengths to keep the trial court in the dark, the city of Aurora in the dark prior to their decision-making, that this was actually a charitable use. It says it specifically, charitable organization, exclusively for charitable purposes. So it's your contention because it was, they should have gotten a special use permit? Is that your contention? At the time they applied for their land use permits, it was a special use. The Aurora City Council in December of 06, and prior to the building permit being issued, changed that to a prohibited use. It is our understanding of the law that whatever the law is at the time of the building permit is the governing law. So it is a prohibited use in the city of Aurora right now. Now, but we're not looking at that now. We're looking at that as an appeals court at the time. Correct, in the record based on our orders. So what it is now is irrelevant. Was there a challenge to the exemption requests? No. In fact, we only found out about them just a few weeks ago. The documents were brought to our attention. The exemption was filed within a month or two after the final judgment was entered in the circuit court. So they paid taxes for seven or eight years, got a refund from the taxpayers for these past three or four. So, Your Honor, that's... All that's in your motion, correct? That is all in the motion, Your Honor. May I make just one quick point, Your Honors? This issue, there was a contention at the beginning of counsel's argument about that this special use has never been applied, that medical clinics have been approved throughout Aurora without regard to their for-profit or not-for-profit. That's not in the record. And that had not been challenged up to about five minutes ago in this case, as best I know. Otherwise, we would have explored it. And I see that as another point for discovery. Thank you. I just have one quick question. That is, it's a question I've already asked. Would you agree that one of the considerations for a due process claim is whether or not the city followed its own internal ordinances and procedures? Absolutely. And our due process claim goes to the structure they've set up. So they've set up the structure. We're really following the structure that's been set up by them. You're seeing that this is not in accord with the provision. It's not protective, certainly, of third-party objectors who are our clients. All right. So you're objecting to how it was set up initially, not how it was actually applied in this situation. Well, certainly it was applied in such a way that it deprived our clients of notice and hearing. Absolutely. Just as in the Grotto case where there was supposed to be a special use permit issued, and I had brought up, just wanted to remind the court, page 42 of our brief addresses the issue of the developer who actively misstates the governing zoning standards on its applications, not being able to rely on the subsequent issue of permits therefrom to excuse its zoning ordinance violations. That's a decision of 2nd District, Village, Wadsworth v. Curtin. All right. Thank you. Thank you. All right, gentlemen, thank you for your arguments here today. We will take the matter under advisement. We will make a decision in due course. We will stand in recess because we have a very busy morning. So I would ask that as you leave, please do so in a quiet and expeditious manner so we can get on with the next case. Thank you so much.